All right, please call the third case for argument. Case number 19-3214, Northern Iowa, United States v. Raul Marin. Very good. Mr. Hawkins, the court appreciates your service as a court-appointed counsel, and you have the floor. Thank you, your honor. May it please the court, My name is Charles Hawkins, and I represent Mr. Marin. The case that presents itself for your consideration today arises... I'm sure you need to slide a little bit to the, I guess, your left. I get there. That's better, from just so we're more like face-to-face in the courtroom. Is that okay? That's perfect. The case arises out of the stop of Mr. Marin's vehicle on July 19, 2017, which resulted in his arrest for possession of a handgun without a permit, which subsequently resulted in the search of his motor vehicle and the seizure of approximately 15.56 grams of methamphetamine. He was indicted in February in a two-count indictment alleging possession with intent to distribute on July 19, and possession of a firearm in furtherance of that July 19 possession with intent to distribute. In December, a superseding indictment was returned alleging a conspiracy to distribute methamphetamine, but there was no allegation that a firearm was possessed in furtherance of the drug conspiracy. The defendant challenges the sufficiency of the evidence to support his conviction on count two on the basis that the mere presence of that firearm in his vehicle on July 19 was not in furtherance of the drug offense charged in count one. On that point, counsel, Chris, there was meth ultimately found in the car with the gun, and that's been found to be sufficient in other cases. I gather your argument is yes, but that wasn't the specific offensive conviction, and do you have any case law that recognizes that distinction? Well, that's why we cited United States versus Castile, Your Honor. On page 815 of United States versus Castile, the Seventh Circuit stated in short, in furtherance of, means what it says. The government must present a viable theory as to how the gun furthered the count one, and it must present specific non-theoretical evidence to tie that gun and the drug crime together for that theory. Now, the theory of the government in using- But this would be an uncharged offense, which of course can be included in relevant conduct for sentencing, and why does in furtherance of get more restrictive if the government doesn't charge everything it could have from the drug trafficking incident in question? I'm not sure there's case law on that. I haven't thought about it before. First, Your Honor, is the defendants entitled under due process to fair notice. We're entitled to defend a case on a theory that arises from the way the government charged the offenses, and the way the government charged this offense was that the gun that was seized and recovered on July 19th was solely and exclusively used for the purpose of collecting a drug debt. The drug debt and the cases that the government has cited generally in their briefs are conspiracy cases, and the collection of a debt with a firearm clearly could support a finding of a 924 that's alleged to be part of a conspiracy, but we don't have that. What we have is a very specific indictment, very specifically alleging that count two was for the purpose of count one, and that is exactly what the indictment alleges, and that's the jury instruction that the court gave the jury that they had defined that it furthered count one. Our position in regard to the testimony of the law enforcement personnel is that that's exactly what the Seventh Circuit says you need more than. For instance, if you had Seifert, or Sanchez, or Leonis, or Ritter coming in and testifying, the defendant carried a gun when he went to drug deals. If they testified that the defendant used the gun for protection, by comparison, take a look at United States versus Hilliard. The defendant admitted he had the gun for protection. There is no evidence in this case that on that date that that gun was being used for anything except collecting a drug debt, not for furthering the possession with intent to distribute the 15.56 grams of methamphetamine seized from the defendant's vehicle. The cases are replete with statements to the effect that mere presence of a firearm with drugs is not sufficient to support the 924 allegation. If we say that the only thing you need to convict a defendant who has a gun in a pickup truck cab with drugs is an officer to come in and say it's common in every case that there's a gun, that it's got to be for protection, it's going to be to further this, it's going to be to further that, that's the theoretical testimony that I believe the Seventh Circuit is saying is not enough. They need something in addition to that. They need somebody to come in and say, hey, he carried a gun. He admitted to us when we took the gun, he had it for protection. In this case, they asked him and he said he was having problems with animals attacking his chickens or going after his farm animals and he had this gun. Everybody says it was for one purpose on that day and that's it. That does not make it part of the conspiracy and it doesn't make it in furtherance of count one. That is without a question a clear distinction that I believe has to be made when you're contemplating whether or not there's proof beyond a reasonable doubt that the jury could find that that firearm on that date furthered that specific drug trafficking offense. It's not in the conspiracy. It basically is irrelevant to the conspiracy save and except for the fact that it establishes membership in my opinion. The fact that none of these individuals ever testified to anything in regard to Mr. Marin engaging in threats, engaging in threatening conduct. In fact, Mr. Leonis testified that when Ms. Steinhold asked him, did you find it strange that the defendant and this is at page 432 of the transcript. Did you find it strange that the defendant and Ritter were hanging out after the incident? No. It wouldn't be in his interest, that is Marin's interest, to be a, and I'm quoting this and I apologize, a prick to him, meaning Ritter, because then Clint would never pay him. There is no indication that on any other time at any place that Mr. Marin ever threatened Ritter regarding a drug debt. Now, I'm not here to argue the fact that these individuals came in and said that or whether it's believable. I'm saying that accepting it for what it is and the testimony that came in and the testimony that did not come in from and particularly having Ritter, who was the individual that's allegedly threatened, there is nothing to support a claim that that gun was involved in anything relating to anything except, and I'm accepting this as a fact, that Ritter was going to be approached for the drug debt. The mere fact that that gun was there on that date, which they claim therefore was in furtherance of a drug offense, doesn't relate to the drugs that were found in that car. There was no drug transaction arranged. There was no meeting set up between he and Ritter. Mr. Marin said he was going there to try and get the title to the trailer because Ritter goes there late at night to feed his calves, which he has on Seifert's property. You have to look at this in the context solely and exclusively, did it further the offense for which he was charged in count one. What's the remedy if we agree with you just on this argument? If you agree solely and exclusively on this argument, the remedy is judgment of acquittal on count two, which then means that he loses the five-year consecutive sentence and he serves a 10-year mandatory minimum on the drug offenses. What about the testimony as summarized in the appellee's brief from Mr. Ritter that defendant was one of his main sources of drugs and that he would buy and sell drugs from that location in which the car and the drugs and the gun were all found together. Is that not enough for a reasonable fact finder to find that he had the gun in furtherance of selling drugs? No, because Ritter could have testified, I was supposed to meet him that night on a drug deal, but Ritter didn't. The testimony was that these people learned later from this person or that person that supposedly he got arrested with a gun. They knew that there was a drug debt with Ritter and then they turned that into the fact that, well, he went there to collect the drug debt. I'd like to reserve the rest of my time, if I may. Very good. Ms. Steenhold? You're a little vague and I'm breaking up, so your mic may need some adjusting. Can you all hear me? I'll move it a little closer. That's better. I think you need to lean forward probably. Okay. Now, did this court correctly determine the two issues before this court today? First, there's sufficient evidence at trial to convict the defendant of a 924c conviction in relation to the traffic stop that occurred on July 19, 2017. Second, traffic stops do not violate the Fourth Amendment. Now, turning to the first issue, the defendant possessed a firearm on July 19, 2017 in furtherance of drug trafficking. There's two elements to establish a 924c conviction. The first one is not in question here. It is undisputed that a drug trafficking crime occurred on July 19, 2017. Therefore, we need to determine whether the defendant possessed a firearm in furtherance of that crime. Now, Eighth Circuit case law allows us to look at a number of factors, including the proximity of the weapon to the drugs, the accessibility of the weapon to defendants, and expert testimony on the matter. Here we have all that. We have defendant with a loaded handgun in his backseat of his truck within reach. Also within reach is distribution quantity of drugs, and then also tools of the drug trade to include brass knuckles, $1,050 in cash, and surveillance equipment. Now, Special Agent Ewald's expert testimony supports the fact that drug dealers will keep firearms in close proximity to the drugs and other tools of drug trade for a number of reasons. To protect their drugs, to frighten or threaten other individuals for braiding purposes. Now, this is sufficient under Eighth Circuit case law to establish a 924c conviction. What's your best Eighth Circuit case on that? Your Honor, there's two. United States v. Close, and I've cited these in the brief. United States v. Close, it's a 2008 Eighth Circuit case. United States v. Robinson, the Eighth Circuit 2010 case. And the fact of those is that those cases are similar in that the defendants there possessed a firearm, or multiple firearms, in possession with, they were in close proximity to tools of drug trade to include packaging materials, scales, they were in close proximity to the drugs, the distribution quantities, and they were easily accessible to the defendant in those cases. Additionally, there's expert testimony at each of those trials to further support the 924c conviction. Is the Seventh Circuit case counsel has emphasized here, is it inconsistent with our cases in your view, or is he just misreading it or reading it too broadly? The Seventh Circuit case really isn't on point here. As United States v. Close and United States v. Robinson are the two cases that are very much on point. Even United States v. Robinson in particular, even addresses this dual purpose of a firearm. There, the defendant argued that the firearms there were utilized for hunting purposes. Similar to Mr. Marin here arguing that, well, I use this firearm for varmint control. First, I'd argue that the law enforcement testified during the trial that the loaded handgun is inconsistent with varmint control in their training and experience. It's more typical that long guns are used for such activities. But regardless, firearms can have a dual purpose. Am I right in construing your argument as being we don't have to focus on the conspiracy that this evidence was sufficient for inference of possession with intent to distribute it count as well as a conspiracy count? Absolutely, your honor. Okay, thank you. Was there evidence in Robinson that the defendant was going to use the firearm that evening for something other than the specific crime? I don't believe so, your honor. I believe in Robinson, that's the case where they go to the defendant's bedroom and he has the firearm and stuff under his, I believe he has it under his bed or it's around. I don't believe that there's, I don't recall there being situations where he had a lined up drug deal that night or anything to that regard. So for those reasons, your honor, it's circuit case law says that proximity to the firearms, proximity to the distribution quantity of drugs, plus tours of the drug trade, the defendant's accessibility to the firearm, as well as expert testimony is sufficient to establish the 924C conviction. If we had evidence that he had just come from shooting something that was trying to attack its chickens, would that affect the assessment? Because then we could still have all the stuff which you're talking about and also evidence that he was actually using it for environment control as you described that night, right? Yes, your honor. And that would make defendant's argument stronger, but there was no evidence in the record to address that whatsoever. And again, I would point the court to United States v. Robinson. Firearms can have a drug deal. And so even if he did use it for environment control on occasion, which again, I would note that law enforcement testified that that would be inconsistent with their training and experience to handgun for environment control. But even if that were the case, they can have a dual purpose. So the fact that the firearm was in close proximity to the distribution amount of drugs, and again, those tools of the drug trade, that even if he was coming from shooting environments, which then there's no evidence to support that, then you can still find the 924C conviction. I have to chuckle because I'm sure your expert never appeared before Judge Smith Henley because a prosecutor made that argument when I was on a panel and he jumped on it. From personal experience, if you've got your hands full of barbed, one hand full of barbed wire, you darn well need a handgun to shoot a varmint who appears. Arguably though, there is evidence that he was going to collect the drug debt, right? That he was using the handgun for the drug debt. So let's change the hypothetical. We have some evidence that he was doing something other than furthering the sale that night with that gun. But you're saying that does not matter whether it's shooting varmints or collecting a drug debt. The fact that there's evidence he was going to do something else with the gun does not detract from the case that he was also going to use it for the rents of the sale. Correct, your honor. The four cooperators that came forth and said that a defendant was going to use that firearm that evening to collect a drug debt from Clint Rider strengthens our argument, but it's not, they're not mutual agents. So for those reasons, your honor, we request that the court affirm the district court's order denying defendant's motion for acquittal. Now turning to the second issue, the dollar traffic stop did not violate the fourth amendment. Now Deputy Edwards had two independent reasons establishing reasonable suspicion that night. First, Deputy Edwards had reasonable suspicion to stop defendant's truck to investigate the criminal activity. Facts of this case are that Jerry Seibert called 9-1-1 at 2 44 in the morning to report a suspicious unfamiliar truck with Minnesota plates on his rural property in Iowa. Now this was the third incident within a month where threatening strangers had appeared on Jerry Seibert's property and threatened him or burglarized him. Within 10 minutes, Deputy Edwards encountered defendant's truck two miles within Seibert's farm. It was defendant's truck was driving away from Seibert's farm while Deputy Edwards' vehicle matched the description that Seibert provided in his 9-1-1 calls to law enforcement that night, that being a truck with Minnesota plates. Notably, it's also the only vehicle that Deputy Edwards saw on the road at this time of night in rural Iowa. So based on the totality of the circumstances, including the temporal and geographic proximity of defendant to the crime, the time of night, and the vehicle matching the description that Seibert called into law enforcement, Deputy Edwards had reasonable suspicion to stop defendant's vehicle. Now the second independent grounds that Deputy Edwards had reasonable suspicion as well as probable cause to stop defendant's vehicle were traffic violations. Now even a minor traffic violation establishes probable cause. Here, after defendant, after Deputy Edwards encountered defendant's vehicle, the Deputy Edwards observed the vehicle veer from the right side of the road all the way over to the left side and into almost into the ditch. Now the district court properly found that this was in violation of Iowa Code Section 321-297-1, that being driving on the right hand side of the roadside, which is required. This is also a violation of Iowa Code Section 321-277-A-4 for careless driving. Additionally, it was objectively reasonable based on defendant's driving and the time of night for Deputy Edwards to suspect that there was an OWI occurring. And so for these reasons, your honors, Deputy Edwards had two independent reasons establishing a reasonable suspicion to stop defendant's vehicle that evening. Turning to the loss issue, law enforcement did not unlawfully prolong the stop. This is based on the totality of the circumstances. There is no per se reasonable time for a traffic stop to occur and be concluded, but this traffic stop took approximately 35 minutes and there are two simultaneous investigations occurring during these 35 minutes. That being the investigation of the trespass on Cybert's property and second, this OWI investigation. Now starting with the trespass, I've already discussed the reasonable suspicion to stop the vehicle, that being the defendant's vehicle matching the description Cybert gave law enforcement. It's leaving the area of the crime scene, the only vehicle on the road at the time, and the background situation with the two prior incidences at Cybert's farm within the past. Now when defendant and when Deputy Edwards made contact with the defendant, he received this bizarre story that defendant is at Cybert's farm, 2.45 in the morning, looking for an individual that doesn't live there, Clint Rider, and he's looking for him to get a trailer title corrected. Cybert doesn't recognize the truck. This strikes Deputy Edwards as unbelievable. Later on during the stop, Deputy Edwards inquires more about this, but it is a continuing investigation throughout the duration of the traffic stop. Now the other simultaneous investigation is this OWI. As I've already stated, there is reasonable suspicion to stop the vehicle because of the erratic driving and the time of night. Now when defendant made contact with law Mr. Marin's speech and mannerisms were fast and exciting, which are indicative of someone being under the influence. When he was a consent of Mr. Marin, he took this false and found that it was significantly elevated. Again, indicative of somebody being under the influence of a controlled substance. So about 15 minutes into this 35-minute traffic stop, he calls Deputy Julius, a drug recognition expert, to have him come and investigate what's going on to further investigate this OWI situation. I should note that Deputy Edwards is the only officer on duty that night. It's rural Iowa, and so it's going to take a little bit of time for Deputy Julius to get out of bed, get his uniform on, and get out to the crime scene, the traffic stop rather. Not to mention, he didn't have to stop at a burglary in between there, yet he still gets there by 3 30 in the morning. And while they are waiting for Deputy Julius to arrive, the DRE, Deputy Edwards continued the OWI investigation by looking in the ditch for controlled substances that he had asked Mr. Marin if he had thrown into the ditch. So for these reasons, based on the totality of the circumstances, the law enforcement did not unlawfully prolong the traffic stop. Now for these reasons discussed today, the government requests the court affirm the district court's rulings. If there are no further questions, I will end my oral argument. Thank you. Thank you. Mr. Hawkins for rebuttal. Briefly, your honor. I direct the court's attention to Garcia Hernandez at page 663 cited by the government for the purposes of the arguments they've advanced, and quote, a person's possession of a firearm furthers a drug distribution conspiracy crime when he uses it to frighten another person into paying a debt owed for a previous drug transaction. She talks about the items taken from the car. One of the things she doesn't talk about being seized from the car and in the photographs that were introduced as exhibits, and I can't tell off the top of my head where they are, but one of the officers, whether it was Ewald or the individual who starts with a J, the title was in the car. The title was present in that car. She says that Close and Robinson are the two cases that best support her argument. The Close case clearly says mere possession of drugs and a firearm at the same time is insufficient to support a conviction. The distinguishing factor from the argument I'm making and the Close decision is it was a 924 and a conspiracy case. Robinson relates to a search warrant that was executed. They seize methamphetamine manufacturing equipment. They seize drug lists of customers. They clearly have evidence to support possession of the firearm absent of which the sole and exclusive expert testimony in regard to the gun being used for protection, and I believe, but I couldn't find it here, but I believe Robinson is also a conspiracy to distribute case, and I suggest that there is a clear distinction from those cases and Mr. Marans. Thank you kindly. Very good. Thank you, counsel. The case has been well briefed and argued, and you've mastered our new technology very helpfully. Ms. Smith deserves a very, very, very large amount of credit for me appearing before you today. I'm glad you said that. Our staff has worked very hard to equip us to do this in a way that helps get your clients' appeals resolved promptly as they deserve. Y'all stay well.